UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MAGDALENO GARCIA GONZALEZ, § § § *Plaintiff*, § § vs. § § MICHAEL J. ASTRUE § Commissioner of § Social Security § § *Defendant*. § | CIVIL ACTION NO. H-11-01439 |

## MEMORANDUM AND ORDER

In this case seeking judicial review of a denial of Social Security benefits, Plaintiff Magdaleno Garcia Gonzalez filed a Motion for Summary Judgment and Brief in support. (Dkt. # 7, 7-1). Defendant Michael J. Astrue filed a Cross Motion for Summary Judgment and Brief in support. (Dkt. # 8. 8-1). Plaintiff responded to Defendant's Motion with a Reply. (Dkt. # 10). The case has been transferred to this magistrate judge. (Dkt. # 9). Having considered the parties' briefing, the applicable legal authorities, and all matters of record, the Court **denies** Gonzalez's Motion for Summary Judgment and **grants** the Commissioner's Motion for Summary Judgment.

1

## I. BACKGROUND

Gonzalez is a 46-year old married man currently living with his wife and three children.[1] Gonzalez, who is illiterate and does not speak English, left school in Mexico after completing the sixth grade.[2] Gonzalez is right-handed.[3] From May 1996 through September 2006, Gonzalez worked as a heavy machinery operator at ELG Metals, Inc.[4] On December 28, 2005, Gonzalez was struck in the head and left shoulder by a large chain.[5] Due to pain from his resulting injuries, Gonzalez stopped working on September 20, 2006.[6]

In March 2007, Gonzalez visited Broadway Medical Clinic for anxiety. Gonzalez was diagnosed with panic episodes and assessed as having a Global Assessment of Functioning (GAF) score of 70, indicating "some mild symptoms."[7] During a follow-up visit, his condition was noted as "stable but not totally without anxiety."[8] Gonzalez was prescribed Valium and Xanax.[9]

In July 2007, Gonzalez was diagnosed with impingement syndrome of the left shoulder and a torn left rotator cuff.[10] Gonzalez underwent arthroscopic surgery at the

---

[1] Tr. at 38-39.
[2] *Id.*
[3] Tr. at 20, 215.
[4] Tr. at 146-47.
[5] Tr. at 142, 212, 220.
[6] Tr. at 118, 146.
[7] Tr. at 17, 174-77. A GAF score of 70 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning." (American Psychiatry Association, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., 1994)).
[8] *Id.*
[9] *Id.*
[10] Tr. at 17, 121.

Renaissance Hospital Houston on July 5, 2007 to repair his left rotator cuff tear.[11] Gonzalez again visited the Renaissance Hospital Houston on January 31, 2008 to undergo anesthesia manipulation of his left shoulder.[12] Prior to the operation, Gonzalez had a moderate amount of adhesive capsulitis and did not have a full range of motion in his left shoulder.[13]

Gonzalez visited the Bone & Joint Clinic on March 21, 2008 complaining of pain, difficulty of movement, numbness, tingling, loss of strength, giving out and locking of his left shoulder.[14] Gonzalez also noted that he suffered from claustrophobia and depression and was treating his pain with ibuprofen.[15] After an x-ray, Gonzalez was evaluated as suffering from brachial neuritis, sternoclavicular sprain and rotator cuff rupture of the left side.[16] Gonzalez made a second visit on October 15, 2008, complaining of shoulder pain and stating that "the surgery performed on (his) left shoulder was of no benefit."[17] The physician noted that Gonzalez still did not have full range of motion in his left shoulder and was not at maximum medical improvement as he would "benefit from a clinical evaluation of his left sternoclavicular joint."[18]

On April 27, 2009, Gonzalez applied for both Social Security disability insurance and Supplemental Security Income (SSI) benefits.[19] In his applications Gonzalez alleged

---

[11] Tr. at 17, 121, 188-197.
[12] Tr. at 17, 37, 178-184.
[13] Tr. at 178.
[14] Tr. at 215-18.
[15] Tr. at 210, 218.
[16] Tr. at 210.
[17] Tr. at 211.
[18] Tr. at 212.
[19] Tr. at 14, 125.

that he was disabled as of September 20, 2006, due to frozen shoulder syndrome and ongoing degenerative changes resulting from his left rotator cuff tear.[20] He also stated that he suffered from headaches and anxiety.[21]

Gonzalez underwent a disability evaluation on June 15, 2009 with Dr. Shahnaz A. Karim. Dr. Karim noted that internal and external rotation of Gonzalez's left shoulder was "very limited" with severe pain and atrophy in his left deltoid muscles and left hand.[22] Gonzalez's left shoulder abduction was limited to 80 degrees and holding objects with his left hand was difficult.[23] Dr. Karim diagnosed Gonzalez with a history of severe headaches, history of frozen shoulder, left upper extremity weakness and limited range of motion in his left shoulder.[24] Gonzalez's applications were denied on June 25, 2009, and denied again on August 21, 2009 after reconsideration.[25] On July 21, 2009, Gonzalez returned to work.[26]

In September 2009, Gonzalez filed an Appeal Disability Report, stating that his condition had worsened since his August 10, 2009 disability report and that he was experiencing "a lot of depression and a lot of headaches."[27] Gonzalez then requested a hearing, which occurred before Administrative Law Judge ("ALJ") Greg G. Kenyon on January 11, 2010.[28]

---

[20] Id.
[21] Id.
[22] Tr. at 221.
[23] Tr. at 221-22.
[24] Id.
[25] Tr. at 58-62, 64-67.
[26] Tr. at 39.
[27] Tr. at 165-66.
[28] Tr. at 14, 32.

At the hearing, Gonzalez amended his disability period to a closed period from April 27, 2008 to July 21, 2009.[29] At that time, Gonzalez testified that he did not work during the disability period because of "pain that (he) could not stand," with an average pain rating of six or seven on a scale of ten.[30] He also stated that he suffered from severe headaches, occurring almost daily and lasting for two minutes at a time.[31] Gonzalez testified that the headaches sometimes reached the point where he had to stop working, although his company was not aware that he was stopping work.[32] He stated that he would take 800mg Ibuprofen two or three times a week for his pain, but that his stomach "hurt all day" when he took the medication.[33] Gonzalez testified that he was unable to reach overhead, push, pull or pick up items with his left arm.[34] Gonzalez further testified that he only slept four or five hours a night because he could only stand to stay in one position for thirty to forty minutes at a time.[35] Gonzalez also stated that he had problems taking orders at work when he was in pain.[36]

Lorie J. McQuade, an impartial Vocational Analyst, testified that jobs existed in which a hypothetical 46-year old man, who is illiterate, unable to communicate in English and with Gonzalez's education, could perform unskilled or light work with

---

[29] Tr. at 37.
[30] Tr. at 41.
[31] *Id.*
[32] Tr. at 42.
[33] *Id.*
[34] Tr. at 43-44.
[35] Tr. at 43.
[36] *Id.*

additional restrictions.[37] Such jobs included a garment sorter, a retail marking clerk, and a laboratory sample carrier; these jobs existed in both the local region and nationwide.[38] McQuade stated that these jobs could still be performed if the hypothetical was restricted to simple repetitive tasks involving no more than occasional contact with co-workers, supervisors and members of the general public.[39] McQuade further testified that the jobs she had suggested required a reasoning level of two.[40]

After hearing testimony from Gonzalez and the vocational expert, and reviewing the submitted medical records, the ALJ found that Gonzalez was not disabled.[41] In addition, the ALJ found that Gonzalez's last date insured for purposes of Social Security Disability was December 31, 2011.[42]

The ALJ's determination included the following as findings of fact and conclusions of law:

> (1) Gonzalez had not engaged in substantial gainful activity between April 27, 2008 and July 21, 2009, the alleged closed period of disability;

---

[37] Tr. at 47. Gonzalez's additional restrictions included: No climbing of ladders, ropes or scaffolds, no work around hazards, no exposure to temperature extremes, only occasional reaching, handling, pushing, pulling and fine manipulation with the left arm, and only performing simple repetitive tasks with occasional interaction with co-workers, supervisors and members of the general public.

[38] *Id.* McQuade testified that these jobs were available in the following numbers: Garment sorter: 6,000 in Harris County and the three surrounding counties, 900,000 nationwide. Retail marking clerk: 5,000 in Harris County and the three surrounding counties, 1,500,000 nationwide. Laboratory sample carrier: 3,000 in Harris County and the three surrounding counties, 500,000 nationwide.

[39] Tr. at 47-48.

[40] Tr. at 49, 50. McQuade testified that a reasoning level of two requires the worker to "apply common sense of uninvolved written or oral instructions (and) deal with problems related to concrete variables."

[41] Tr. at 8-26.

[42] Tr. at 16.

(2) Gonzalez was severely impaired by a history of headaches and anxiety, and residuals of a left rotator cuff tear including frozen shoulder syndrome and ongoing degenerative changes;

(3) Gonzalez did not have an impairment or combination of impairments that equaled the listed impairments in Appendix 1;

(4) Gonzalez was unable to perform any past relevant work and he had the residual functional capacity to perform "light work"—to lift and carry 20 pounds occasionally and 10 pounds frequently, except that he had certain restrictions;[43]

(5) That the symptoms and medication side effects to which Gonzalez testified (pain, numbness and loss of use of his left shoulder and arm, headaches, anxiety and stomach pain) were those that could reasonably be expected from Gonzalez's impairments, however, Gonzalez's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they conflicted with the assessment of residual functional capacity;

(6) The objective clinical findings did not support Gonzalez's claimed symptoms or limitations. Specifically, Gonzalez "has not generally received the type of medical treatment one would expect for a totally disabled individual ... with no evidence of (physical) medical treatment after January 2008 (and) no evidence of mental health treatment after March 2007 or at any time during the alleged closed period of disability;"[44] and

(7) Considering Gonzalez's age, education, work experience and residual functional capacity, as well as his particular limitations to his residual functional capacity, jobs that Gonzalez can perform exist in significant number in the national economy.[45]

Gonzalez requested that the Appeals Council review the ALJ's decision.[46] The Appeals Council denied his request on October 23, 2010. Gonzalez then filed a

---

[43] *See supra* note 39.
[44] Tr. at 20-21.
[45] Tr. at 21-23.
[46] Tr. at 27-31.

complaint in this court on April 15, 2011, contending that the ALJ's disability determination was not supported by substantial evidence and contains "error of law."[47]

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 105 S. Ct. 2548, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations and quotation marks omitted).

## III. STANDARD OF REVIEW

When judicially reviewing a determination that an applicant is not entitled to benefits, we determine "(1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence."

---

[47] Dkt. # 7-1, 2.

*Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990). A finding of no substantial evidence is warranted only "where there is a conspicuous absence of credible choices or no contrary medical evidence." *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (internal quotation marks and citation omitted). The court may not re-weigh the evidence in the record, nor try the issues de novo, nor substitute the court's judgment for the Commissioner's decision. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

## IV. ANALYSIS

Gonzalez raises two challenges to the ALJ's decision. Gonzalez contends that the ALJ failed to: (1) properly evaluate his subjective complaints and credibility, and (2) establish that there is other work in the economy that he could perform. The Court treats each argument in turn.

### A. Statutory Basis for Benefits

Gonzalez applied for both Social Security disability insurance and Supplemental Security Income (SSI) benefits. Social Security disability insurance benefits are authorized by Title II of the Social Security Act. The disability insurance program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured *and* disabled, regardless of indigence. *See* 42 U.S.C. § 423(c) (definition of insured status); 42 U.S.C. § 423(d) (definition of disability).

SSI benefits are authorized by Title XVI of the Social Security Act, and provides an additional resource to the aged, blind and disabled to assure that their income does not fall below the poverty line. 20 C.F.R. § 416.110. Eligibility for SSI is based on proof of disability and indigence. *See* 42 U.S.C. § 1382c(a)(3) (definition of disability); 42 U.S.C. § 1382(a) (financial requirements). Although these are separate and distinct programs, applicants to both programs must prove "disability" under the Act. *See* 42 U.S.C. § 423(d)(1)(A) (disability insurance); 42 U.S.C. § 1382c(3)(A) (SSI). The law and regulations governing the determination of disability are the same for both programs. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

### B. Determination of Disability

Under the Social Security Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" *Id.* § 423(d)(2)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality demonstrable by acceptable clinical and laboratory diagnostic techniques. *Id.*; 42 U.S.C. § 1382C(a)(3)(B).

A disability claim is examined in a five-step sequential analysis to determine whether "(1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in Appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007). If, at any step, the claimant is determined to be disabled or not disabled, the determination is conclusive and the inquiry ends. *Id*.

The burden of establishing disability rests with the claimant for the first four steps, and then shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant is able to perform. *Id*. The Commissioner's analysis at steps four and five is based on the assessment of the claimant's residual functional capacity ("RFC"), or the work a claimant still can do despite his or her physical and mental limitations. *Perez v. Barnhart*, 415 F.3d 457, 461-61 (5th Cir. 2005); 20 C.F.R. §§ 404.1545 and 416.945. The Commissioner assesses the RFC before proceeding from step three to step four. *Id*. Once the Commissioner shows that a claimant is able to perform a significant number of jobs in the national economy, the burden shifts back to the plaintiff to rebut this finding. *Id*.

### C. ALJ'S Determination of Credibility

Gonzalez contends that the ALJ's finding was not supported by substantial evidence because the ALJ failed to "make clear to the plaintiff and to any subsequent

reviewer the weight given to the plaintiff's statements and the reasons for that weight"[48] as required by Social Security Ruling 96-7p.

Under SSR 96-7p, a State medical professional's opinion concerning the credibility of the plaintiff's alleged limitations must be considered by the ALJ. SSR 96-7p (Cum. Ed. 1996). The ALJ's decision must explain the weight given to the medical professional's opinion. *Id.* When explaining the weight given, "(i)t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individuals allegations have been considered' or that 'the allegations are (or are not) credible.' The decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

The ALJ's credibility determinations are generally entitled to great deference. *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir. 2000). The ALJ found that Gonzalez's allegations concerning his symptoms were not supported by substantial medical evidence in the record. In making this determination, the ALJ reviewed all of Gonzalez's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529. In performing this review, the ALJ specifically relied upon SSR 96-7p.[49] In support of his conclusion, the ALJ noted that Gonzalez "has not generally received the type of medical

---

[48] Dkt. # 7-1, 5.
[49] Tr. at 20.

treatment one would expect for a totally disabled individual."[50] Specifically, the medical record shows that Gonzalez made only five doctor visits for his physical pain—only two visits included actual treatment. Gonzalez did not receive any physical treatment during the alleged closed period of disability. Further, the ALJ reasoned that Gonzalez's shoulder pain appeared to be well-controlled with nonprescription ibuprofen.[51]

The ALJ noted that, though Gonzalez experienced some loss of function in his non-dominant left shoulder, there was no evidence that Gonzalez lost any function in his dominant right arm.[52] The ALJ also found that Gonzalez had no more than mild restrictions in his daily living,[53] specifically noting that Gonzalez drove himself to his hearing.[54]

The ALJ's determination of "not disabled" was further corroborated by the opinions of the State medical consultants. The Fifth Circuit requires that a claimant's subjective complaints be corroborated, at least in part, by objective medical testimony. *See Wren v. Sullivan*, 925 F.2d 123, 129 (5th Cir. 1991) (in finding claimant not disabled, the ALJ noted that "the extent of the claimant's subjective complaints of pain, weakness, limitation of motion and other subjective symptomatology has not been borne out by the credible medical findings of record."). No treating or examining physician made findings

---

[50] Tr. at 20.
[51] Tr. at 21.
[52] Tr. at 18.
[53] Tr. at 19. Gonzalez "performed all aspects of personal hygiene, walks and exercises, brings his children to and from school, takes care of his pets, performs home repairs, mows his lawn, drives a car, and shops for groceries and personal items. He also reads, watches television, and goes to church every Sunday."
[54] Tr. at 38.

equivalent in severity to the criteria of any impairments listed in Appendix 2.[55] The ALJ specifically noted that there was no evidence of medical treatment after January 2008 or during Gonzalez's alleged closed period of disability. Discussing Gonzalez's anxiety problems, the ALJ explained that there was no evidence of mental health treatment in the record after 2007 or during Gonzalez's closed period of disability.[56]

Gonzalez further contends that "the Social Security Act does not require the claimant to be totally incapacitated to be eligible for benefits."[57] Gonzalez relies on *Singletary v. Bowen*, in which the court held that "a finding that a claimant is able to engage in substantial gainful activity ... requires a determination that a claimant can hold whatever job he finds for a significant period of time." 798 F.2d 818, 822 (5th Cir. 1986). In *Watson v. Barnhart*, the Fifth Circuit held that the ALJ erred by failing to determine whether the claimant was capable not only of obtaining, but also maintaining employment. 288 F.3d 212, 218 (5th Cir. 2002). However, the Fifth Circuit has clearly rejected the idea that an ALJ must in all cases make a separate finding that a claimant has the ability to maintain employment. *See Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) ("nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case"); *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) ("absent evidence that a claimant's ability to maintain

---

[55] Tr. at 18.
[56] Tr. at 19, 21. The ALJ notes that, notwithstanding the lack of treatment during Gonzalez's closed period of disability, the ALJ restricted Gonzalez to "work requiring no more than simple repetitive tasks and occasional interaction with co-workers, supervisors and members of the general public." These restrictions give Gonzalez "the maximum benefit of doubt with regard to his anxiety complaints."
[57] P's Response to D's Cross Mot. for SJ, Dkt. # 10.

employment would be compromised despite his ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC, we do not read *Watson* to require a specific finding that the claimant can maintain employment"). Any such required extra finding must be predicated on the claimant having an impairment that "waxes or wanes" in its manifestation of disabling symptoms. *Id.*

In this case, Gonzalez has not offered evidence that his condition "waxes and wanes" in intensity such that his ability to maintain employment was not adequately taken into account in his RFC determination. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). As a result, Gonzalez has failed to show any error on this ground. Accordingly, the ALJ did not violate Social Security Ruling 96-7p and did not abuse his discretion in finding that Gonzalez's testimony was not credible.

### D. Residual Function Capacity Supported by Substantial Evidence

Gonzalez contends that the ALJ failed to establish that there is other work in the national economy that Gonzalez could perform because the Vocational Expert's ("VE") testimony conflicts with the DOT. Specifically, Gonzalez argues that an individual who is limited to carrying out and remembering simple instructions cannot perform a job with a reasoning level of "2".

The ALJ's determination restricts Gonzalez to light, unskilled work "requiring no more than simple repetitive tasks."[58] Gonzalez argues that "according to the DOT, only

---

[58] ALJ Hearing Decision, Tr. at 19.

reasoning level "1"[59] jobs can be performed by an individual who can understand and carry out simple instructions."[60] In turn, the Commissioner contends that the ALJ did not intend to restrict Gonzalez to jobs requiring a reasoning level of "1", but rather to unskilled work.[61]

At the hearing, the VE testified that her "testimony on [her] knowledge, education, training and experience [were] consistent with the DOT."[62] The ALJ then asked the VE two hypothetical questions concerning Gonzalez's residual functional capacity. All of Gonzalez's limitations and restrictions were included in the hypothetical questions.[63] In response, the VE listed three jobs that a hypothetical individual with Gonzalez's work experience, education and restrictions could perform in the regional and national economy. On cross-examination, the VE testified that the jobs she listed were "light, unskilled jobs" with a reasoning level of "2".[64] The VE further testified that a reasoning level of "2" requires the worker to "apply common sense of uninvolved written or oral instructions, and deal with problems related to concrete variables."[65] In closing, Gonzalez argued that he was limited to simple instructions and could only perform jobs

---

[59] A reasoning level of "1" requires the worker to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from those situations encountered on the job." Dictionary of Occupational Titles, Vol. II, App. C § III.
[60] P's Mot. for SJ, Dkt. # 7-1, 8.
[61] D's Mot. for SJ, Dkt. # 8-1, 13.
[62] Tr. at 45.
[63] Tr. at 46-47.
[64] Tr. at 49.
[65] Tr. at 50.

with a reasoning level of "1",[66] meaning the jobs listed by the VE were "outside the level" of the VE's hypothetical.[67]

Under SSR 00-4p, before relying on VE testimony to support a disability determination, the ALJ must identify and obtain a reasonable explanation for any direct conflicts between occupational evidence provided by the VE and the DOT, and explain in the decision how any conflicts were resolved. SSR 00-4p (Cum. Ed. 2000). Neither the DOT nor the VE's evidence automatically "trumps" when there is a conflict. *Id.* The ALJ must resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony rather than on the DOT information. *Id.*

Gonzalez asks that this Court follow *Allen v. Barnhart*, a California case holding that "jobs with (a) GED reasoning level of 2, which presuppose an ability to follow detailed and involved instructions, exceed the ALJ's limitation to simple routine tasks."[68] No. C 02-4171 SI, 2003 WL 22159050, at 10 (N.D. Cal. 2003). The Court instead finds *Gaspard v. Astrue* to be instructive. In *Gaspard*, the plaintiff argued that the ALJ's decision was not supported by substantial evidence because the reasoning skills of the jobs suggested by the VE exceeded the limitations contained in the hypothetical questions asked of the VE. 609 F. Supp. 2d 607, 611 (E.D. Tex. 2009). More specifically, the

---

[66] Dkt. # 7-1, 8. In his Motion for Summary Judgment, Gonzalez states that "According to the DOT, only reasoning level "1" jobs can be performed by an individual who can understand and carry out simple instructions." Gonzalez does not state where this limitation is located in the DOT.
[67] Tr. at 52-53.
[68] P's Mot. for SJ, Dkt. # 7-1, 9.

plaintiff urged that his limitations restricted him to jobs with a reasoning level of "1", while the jobs listed by the VE included jobs with a reasoning level of "2" or more. *Id.* The court explained that federal regulations clearly allow ALJs to rely on either VE testimony or the DOT when determining whether claimants can adjust to alternative available work. *Id.* at 615 (citing to 20 C.F.R. § 404.1566(d), (e) (2005)). The court noted that an ALJ may, in appropriate cases, give greater weight to VE testimony than the DOT because VE testimony is "tailored to an *individual* claimant's work skills as contained in an administrative law judge's hypothetical question." *Id.* The court held that when the conflict between the VE testimony and the DOT is "tangential, implied or indirect", the VE's testimony may be relied on by the ALJ without resolving the conflict as long as the record provides an adequate basis for doing so. *Id.* Further, the court noted that a limitation to simple, repetitive tasks "does not necessarily preclude ability to perform jobs with a reasoning level of "2" or higher." *Id.* at 616. The court pointed to cases from other jurisdictions holding that a limitation to simple and repetitive tasks is consistent with a reasoning level of "2". *See, e.g., Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that reasoning level two "appears more consistent with a limitation to simple and routine work tasks"); *Money v. Barnhart*, 91 Fed. App'x. 210, 215 (3d Cir. 2004) (holding that "working at reasoning level 2 would not contradict the mandate that [plaintiff's] work be simple, routine and repetitive"); *Riggs v. Astrue*, 2008 U.S. Dist. LEXIS 92922, 2008 WL 1927337 (W.D. Wash. Mar. 31, 2008); *Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005); *Flaherty v. Halter*, 182 F. Supp. 2d 824 (D. Minn. 2001).

In the present case, Gonzalez is limited to unskilled work "requiring no more than simple repetitive tasks and occasional interaction with co-workers, supervisors and members of the general public."[69] At no point did the ALJ restrict Gonzalez to jobs with a specific reasoning level. Therefore, though Gonzalez asserts that the VE's testimony and the DOT are in conflict, the Court finds this argument to be unsupported by the record. Accordingly, the ALJ sustained his burden of establishing that there is other work in the economy that Gonzalez could perform.

## V. CONCLUSION

A review of the record reveals that the ALJ applied the appropriate legal standards in making this determination. Additionally, substantial evidence supports the determination that Gonzalez was not disabled during the relevant time period. A review of the pleadings, the discovery and disclosure materials on file, and any affidavits shows that there is no genuine issue as to any material fact in this case, and summary judgment is therefore appropriate. FED. R. CIV. P. 56(c). Accordingly, the Court **denies** Gonzalez's Motion for Summary Judgment and grants the Commissioner's Motion for Summary Judgment.

Signed at Houston, Texas on April 26, 2012

George C. Hanks, Jr.
United States Magistrate Judge

---

[69] Tr. at 20.